**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEREK DYSART,**<br><br>Plaintiff,<br><br>v.<br><br>**ABDIKADIR M. ISHAG, J.B. HUNT TRANSPORT, INC. and CQ TRANSPORTATION LLC,**<br><br>Defendants. | CIVIL ACTION NO. **26-393** |

**MEMORANDUM OPINION**

## I. Introduction

Pending before the court is a partial motion to dismiss the claim for punitive damages (ECF No. 16) filed by defendants, Abdikadir Ishag ("Ishag") and CQ Transportation LLC ("CQ"), with brief in support (ECF No. 17). The third named defendant, J.B. Hunt Transport, Inc. ("JB Hunt") did not file a motion to dismiss. Plaintiff Derek Dysart ("Dysart") filed a response and brief in opposition to the motion (ECF Nos. 21, 22). The motion is ripe for decision.

## II. Standard of Review

The Federal Rules of Civil Procedure govern motions to dismiss. Specifically, Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) works in conjunction with Rule 8, which requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

For a complaint to withstand a motion to dismiss, it must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). To be considered facially plausible, the facts of the claim must allow a court reasonably to infer that the defendant is liable for the alleged wrongdoing. *Id.* In addition to accepting the factual allegations as true, the court must also view those facts "in the light most favorable to the non-moving party." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).

Following *Twombly* and *Iqbal*, "it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss" because '"threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Likewise, "the court need not accept as true 'unsupported conclusions and unwarranted inferences,' or the plaintiff's 'bald assertions' or 'legal conclusions.'" *Cook v. W. Homestead Police Dep't*, No. 2:16-CV-01292, 2017 WL 1550190, at *2 (W.D. Pa. May 1, 2017) (quoting *Doug Grant, Inc. v. Great Bay Casino Corp.,* 232 F.3d 173, 183–84 (3d Cir. 2000) and *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

The United States Court of Appeals for the Third Circuit laid out the following three-part process for a court to determine whether a complaint can survive a motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010)).

**III. Background**

This case arose out of a tractor trailer accident on I-80 on February 2, 2025. Dysart alleges in the Complaint (ECF No. 1) that Ishag was driving a tractor trailer bearing the logos of JB Hunt and CQ at a high rate of speed in hazardous icy conditions, which caused the truck to jackknife and block both westbound lanes of I-80. ¶ 10. Dysart alleges that after the crash, Ishag failed to take actions to remove the truck or to warn other motorists of the hazard. ¶ 11. "Moments later," Dysart was unable to steer around the truck, collided with it, and suffered serious and permanent injuries. ¶¶ 12, 17.

Count 1 asserts a negligence claim against Ishag. Dysart alleges that the "conduct was reckless, malicious, and exhibited a willful and wanton disregard for the safety of the motoring public" (including him) and seeks punitive damages. ¶ 25.

Count 4 asserts a negligent hiring, retention, training, supervision and entrustment claim against CQ. There are no actual facts pleaded about CQ's conduct. Instead, the complaint contains a laundry list of conclusory actions which CQ took or failed to take. ¶ 40 (a-j).

## IV. Discussion

Ishag and CQ argue that the factual averments in the complaint do not support recovery of punitive damages. They argue that Ishag's failure to maintain control of his vehicle and driving too fast in wintry conditions establish only ordinary negligence. CQ argues that there are no averments about how it acted recklessly in allowing Ishag to drive its truck or how it failed to provide adequate training. Plaintiff argues it is premature to dismiss his request for punitive damages prior to discovery. *See, e.g., Shank v. Hanover Intermodal Transp., Inc.*, No. 1:23-CV-01080, 2023 WL 5401806, at *4 (M.D. Pa. Aug. 22, 2023) (collecting decisions) ("In numerous cases with facts analogous to the instant case, federal courts interpreting Pennsylvania law have declined to dismiss requests for punitive damages prior to discovery, finding that claims of negligence could plausibly support a punitive damages remedy.").[1]

The decision in Shank did not extensively analyze the standard applicable to recover punitive damages against a trucker's employer. In *Carson v. Tucker*, No. 5:20-CV-00399, 2020 WL 4015244 (E.D. Pa. July 16, 2020), the court described the standard applied to employers as follows:

> D. Punitive Damages Standard – Employers and Vicarious Liability
>
> Pennsylvania courts recognize that an employer "may be held vicariously liable for punitive damages if the actions of its [employee]: (1) were clearly outrageous, (2) were committed during and within the scope of the agent's duties, and (3) were done with the intent to further the principal's interests." *Achey*, 2009 WL 9083282, at *10 (citing *Loughman v. Consol-Pa. Coal Co.*, 6 F.3d 88, 101 (3d Cir. 1993)). Though punitive damages may be imposed for vicarious liability even if the employer did not direct or approve the acts by the employees,. *Lucchesi v. Johnson*, No. 15-6114, 2015 WL 9308334, at *3 (E.D. Pa. Dec. 22, 2015) (citing *Shiner v.*

1 The decision is *Shank* involved a complaint with a similar conclusory laundry list.

> *Moriarty*, 706 A.2d 1243, 1264 (Pa. Super. Ct. 1983)), courts use "great caution" in applying punitive damages if the employer did not know or authorize the employee's tortious conduct, *Achey*, 2009 WL 9083282, at *10 (citing *Funk v. Kerbaugh*, 70 A. 953, 954 (Pa. 1908)). In doing this, courts place great emphasis on ensuring that the employee's conduct complained of is "clearly outrageous to justify vicarious imposition of exemplary damages" on the employer. *Id.* (citing *Skeels v. Universal C.I.T. Credit Corp.*, 335 F.2d 846, 852 (3d Cir. 1964)). To warrant imposing punitive damages for vicarious liability, the employer must have a "conscious appreciation" or "sufficient notice" that their employee would perform the tortious conduct. *Felkner*, 2014 WL 1013474, at *7; *Achey*, 2009 WL 9083282, at *6.

*Id.* at *3. The court described the circumstances in which an employer might be held liable for punitive damages:

> Courts have held employers liable for punitive damages for the actions of their employees in a limited set of circumstances. For instance, a medical condition with symptoms making the driver likely to crash or a history of safety violations leading to the same type of collision that occurred is sufficient to put the employer on notice. *See generally Achey*, 2009 WL 9083282; *Gonzalez*, 2020 WL 2571101. However, despite an employer's awareness of a driver's medical condition, punitive damages may not be justified if the employer performed extensive medical examinations for commercial driver fitness that found defendant fit to operate a vehicle despite his condition. *Achey*, 2009 WL 9083282, at *5 (finding that an employer's awareness of a driver's sleep apnea does not justify punitive damages when the driver fell asleep behind the wheel and caused a collision because the employer performed numerous medical examinations).
>
> Additionally, for a past accident to serve as a basis for punitive damages against an employer, there must be a nexus between the prior incident and the conduct leading to the accident. *Felkner*, 2014 WL 1013474, at *6 (citing *Achey*, 2009 WL 9083282, at *5). In other words, the prior incident must be reasonably related or the same as the conduct leading to the current accident. *See id*. For example, a driver violating the fourteen-hour driving regulations created to prevent fatigue and inattentiveness at least seventy-six times in a span of eleven months has a nexus with an accident caused by the same driver as a result of his inattentiveness to traffic conditions. *Gonzalez*, 2020 WL 2571101, at *2. However, a nexus does not exist if a driver has previous incidents of a speeding ticket, logbook deficiencies, and safety violations, but the conduct that caused the accident is falling asleep at the wheel. *See Felkner*, 2014 WL 1013474, at *6 (citing *Achey*, 2009 WL 9083282, at *7).

*Id*. at *5. The court in *Carson* granted a motion to dismiss punitive damages against the employer where the complaint contained only a laundry list and failed to plead any facts to support the inference that the employer had any knowledge about the driver that would give them any sort of notice that he was not fit to operate a tractor-trailer. *Id*.

With that background, the court turns now to the facts of this case. With respect to Ishag, the court concludes that the averments are sufficient, at this stage of the case, to sustain the possibility of punitive damages. Contrary to defendants' argument, the complaint does not solely focus on the accident, but also on the failure to take any steps to warn oncoming motorists of the blocked lanes. It would be premature to dismiss the demand for punitive damages.

With respect to CQ, the court concludes that the request for punitive damages will be dismissed without prejudice. The complaint in this case is entirely silent with respect to any information that would have put CQ on notice that Ishag posed a risk by driving a tractor trailer (or the causal connection between that risk and the actual accident or CQ's reckless disregard of that risk). For example, there are no allegations that Ishag did not have a valid CDL license or had medical issues or prior traffic or safety violations. The allegations about CQ's allegedly outrageous conduct are purely speculative. *See Koch v. Lawson*, No. 4:22-CV-01647, 2023 WL 2923139, at *4 (M.D. Pa. Apr. 12, 2023) (granting motion to dismiss punitive damages against employer where complaint asserted "many legal conclusions about what Burgess Trucking 'knew or should have known,' but those allegations are wholly unsupported by any factual specificity."); *Jones v. Silver Creek Transp., LLC*, 701 F. Supp. 3d 284, 289 (W.D. Pa. 2023) (dismissing punitive damages against employer where complaint alleged boilerplate, conclusory allegations). The motion to dismiss the punitive damages demand against CQ will be granted.

**VI. Conclusion**

For the reasons set forth above, the partial motion to dismiss the amended complaint (ECF No. 16) will be granted in part and denied in part. The motion will be denied with respect to Ishag. The motion will be granted with respect to CQ, without prejudice to plaintiff's opportunity to seek punitive damages against CQ if discovery discloses sufficient facts to meet the standard set forth above.

An appropriate order follows.

Dated: August 19, 2026

BY THE COURT

s/ Joy Flowers Conti
JOY FLOWERS CONTI
SENIOR UNITED STATES DISTRICT JUDGE